UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,

   v.

ARMADO HERNANDEZ,

        Defendant.

No.  2:11-cr-00026-GEB

**ORDER RE: RESTITUTION**

Two groups of victims seek restitution under 18 U.S.C. § 2259 in connection with Defendant Armado Hernandez's guilty plea to one count of Receipt and Distribution of Child Pornography proscribed in 18 U.S.C. § 2252(a)(2): a victim identified as "Vicky" and John Does I-V, who are collectively referred to as members of the "Erik" and/or "8 Kids" series.[1] Defendant was sentenced on December 20, 2013, but decision on the restitution requests was continued until June 27, 2014.

A tentative ruling regarding the restitution requests was filed on June 26, 2014, (ECF No. 79), and oral argument was heard on June 27, 2014.

---

[1]   John Does I-V comprise five of eight individuals who were sexually abused and made the subject of child pornography while living together in a foster home. See generally The Law Office of Erik Bauer's Restitution Request, Apr. 1, 2013, ECF No. 60-6.

1

1    For the below-stated reasons, "Vicky" is awarded

2  $2,282.86 in restitution, and each John Doe's restitution request

3  is denied.

4                          **I. FACTUAL BACKGROUND**

5    The Factual Basis for Defendant's Plea Agreement

6  states, in relevant part:

7           In the summer of 2010, FBI Chico
         received information from an officer of the
8        Glenn County Sheriff's Department regarding a
         computer he had received from a concerned
9        citizen. . . .

10       . . . .

11          The law enforcement forensic review of
         this computer . . . revealed that there were
12       approximately 450 still image files of child
         pornography and approximately 250 videos
13       files or child pornography on the abandoned
         computer. Many were downloaded by Hernandez
14       using a peer-to-peer file-sharing network.
         Forensic analysis of the computer shows no
15       evidence of any users of the computer other
         than Hernandez (and the concerned citizen).
16

            There is evidence that the registered
17       owner of the software for this abandoned
         computer, Amado Hernandez, . . . downloaded
18       these files. Evidence of this comes from the
         photo "picture_5.jpg," which was located in a
19       Quick Cam folder. This is a photo of an
         apparently naked Amado Hernandez holding a
20       pad of paper displaying his peer-to-peer
         username and the date "08 MAR 2009." At the
21       bottom of the image . . . is imprinted a
         Quick Cam generated date 03/08/2009 11:26 AM.
22       This date correlates with the "create" date
         for the image file found on Hernandez's
23       computer, as revealed by the forensic
         software. Computer files containing visual
24       depictions of minors engaged in sexually
         explicit conduct were downloaded very close
25       in proximity to the time of the photo of the
         apparently naked Amado Hernandez in
26       "picture_5.jpg" was created.

27          The video and image files were forward
         to . . . NCMEC, which compared those files
28       with images of known child pornography

victims. NCMEC subsequently reported that 43 of those submitted video files were of known child victims from 15 different identifiable series of child pornography. Moreover, NCMEC also reported that there were 72 child pornography still images from 35 different identifiable series of child pornography . . . .

. . . .

When interviewed, Hernandez said . . . he lived in Chico during at least March 2009 through October 2009. He said through July 2009 he used a custom built desktop computer that he later discarded because it was not working well. Hernandez admitted that he downloaded and possessed child pornography during this time in Chico . . . .

Because he downloaded and viewed the images of child pornography, the defendant knew that the images that he downloaded through the file-sharing network showed minors engaged in sexually explicit conduct.

(Plea Agreement 15:6-17:10, ECF No. 44.)

The Presentence Report provides additional information concerning Defendant's admitted use of the peer-to-peer network to download child pornography as follows:

A forensic review of the [referenced] computer . . . revealed that . . . [m]any [of the still images and videos of child pornography] were downloaded by [Defendant] using a peer-to-peer file-sharing network, Gigatribe.

. . . .

On January 2, 2011, [Defendant] was contacted in San Diego, California, on a cruise ship. [Defendant] admitted he had used the peer-to-peer network user names "pnplatinoboi," "pnpcaliperv," "pnpcaliperv2," and "pnpervlatino" to download child pornography. The first three user names were used while he lived in Chico. The latter account was created just weeks prior to the interview, while he lived and worked on the cruise ship.

3

1  (Presentence Report ("PSR") ¶¶ 3, 7.)

2          A May 29, 2014 Forensic Investigation Report prepared

3  by Jos Van Hout, the Forensic Examiner/Investigator who conducted

4  the original forensic examination of the referenced computer,

5  further states:

6          On May 20, 2014 at approximately 12:37PM
   I received a call from FBI Agent Mark
7  Roberts. He indicated there was a question
   related to some Child Pornography image and
8  video files in this case. Agent Roberts
   inquired if there was a way for me to access
9  my original forensic files and reports to
   determine if the[] files in question were
10 viewed and/or manipulated by the [Defendant].
   . . .
11
           On May 23, 2014 at approximately 1100
12 hours I arrived at the Butte County District
   Attorney's Office to review my files and
13 evidence.

14         . . . .

15         Agent Roberts had submitted [certain]
   file names in question for me to analyze. The
16 question in [these] files was whether the
   suspect viewed the images or video.
17
           1) A video from NCMEC report request
18 number 49933 from the "Vicky" series
   identified as Vicky_newest_(PTHC).wmv
19
           I located the video file in the
20 following path on the computer. C/Documents
   and Settings/Amado/My Documents/My
21 Downloads/Gigatribe/pnpcaliperv/vids/Vicky_ne
   west_(PTHC).wmv
22
           . . . .
23
           2) An image file from NCMEC report
24 number 49933_1 from the "Erik" series
   identified as P080.jpg
25
           I located the video [sic] file in the
26 following folder path on the computer.
   C/Documents and Settings/Amado/My
27 Documents/My Downloads/ Gigatribe/
   pnpcaliperv/ pics/ P080.jpg
28

1              . . . .

2              The examination of the[ referenced]
               files determined that [they] were manipulated
3              by the computer or the user after being
               downloaded and placed on the computer. Both
4              of these files around the same time on
               05/30/09 were accessed by the computer or a
5              resident computer program.

6              The[] timestamp markers are not exact as
               to what specifically happened as to a user or
7              program access. It can be stated that these
               files were opened and manipulated after being
8              downloaded or copied to this computer. . . .

9    (Forensic Investigation Report 1-3, May 29, 2014, ECF No. 75-1.)

10        Defendant submitted a declaration from Marcus Lawson in

11   opposition to the restitution request, in which Mr. Lawson

12   responds to the government's Forensic Investigation Report.

13   (Lawson Decl., ECF No. 78-1.) Mr. Lawson avers, in relevant part:

14             The file Vicky_newest_(PTHC).wmv does not
               appear to have been accessed since it was
15             moved to where it currently resides. It
               appears the file was likely moved to the
16             current folder . . . on 5/30/09 without being
               opened. The "Vids" folder is a user created
17             folder created on 5/28/09 at 12:05:25 am PST.
               The movie was likely moved to this new folder
18             on 5/30/09 but without being opened. . . .

19             The image P080.jpg also does not appear to
               have been accessed since created, it appears
20             it was moved to its current folder . . . on
               5/30/09. The "Pics" folder is a user created
21             folder created on 5/27/09 at 11:09:56Ppm
               [sic] PST.

22             . . . .

23
               . . . . [B]ased only on a review of [Jos Van
24             Hout's] report . . ., it is my opinion that
               there is no evidence to support that any of
25             the three files in question were opened and
               viewed.

26

27   (Id. at 3-4.)

28

## II. LEGAL STANDARD

"Enacted as a component of the Violence Against Women Act of 1994, [18 U.S.C.] § 2259 requires district courts to award restitution for certain federal criminal offenses, including [the receipt of] child-pornography . . . ." Paroline v. United States, 134 S. Ct. 1710, 1716 (2014).

> Section 2259 states a broad restitutionary purpose: It requires district courts to order defendants "to pay the victim . . . the full amount of the victim's losses as determined by the court," § 2259(b)(1), and expressly states that "[t]he issuance of a restitution order under this section is mandatory," § 2259(b)(4)(A).

Id. at 1718-19. Section 2259(b)(3) defines the phrase "full amount of the victim's losses" to include "any costs incurred by the victim for --

> (A) medical services relating to physical, psychiatric, or psychological care;
>
> (B) physical and occupational therapy or rehabilitation;
>
> (C) necessary transportation, temporary housing, and child care expenses;
>
> (D) lost income;
>
> (E) attorneys' fees, as well as other costs incurred; and
>
> (F) any other losses suffered by the victim as a proximate result of the offense.

The Supreme Court recently held in Paroline that § 2259(b)(3)(F)'s "proximate-cause requirement applies to all the losses described in § 2259." Paroline, 134 S. Ct. at 1722. "Restitution is therefore proper under § 2259 only to the extent the defendant's offense proximately caused a victim's losses."

6

1    Id.   However,

2        [i]n th[e] special context, where it can be
         shown both that a defendant possessed a
3        victim's images and that a victim has
         outstanding losses caused by the continuing
4        traffic in those images but where it is
         impossible to trace a particular amount of
5        those losses to the individual defendant by
         recourse to a more traditional causal
6        inquiry, a court applying § 2259 should order
         restitution in an amount that comports with
7        the defendant's relative role in the causal
         process that underlies the victim's general
8        losses.

9    Id. at 1727.

10       "There are a variety of factors district courts m[ay]

11   consider in determining a proper amount of restitution . . . ."

12   Id. at 1728.   "[A]s a starting point, [district courts may]

13   determine the amount of the victim's losses caused by the

14   continuing traffic in the victim's images . . . , then set an

15   award of restitution in consideration of factors that bear on the

16   relative causal significance of the defendant's conduct in

17   producing those losses." Id.

18       These could include the number of past
         criminal defendants found to have contributed
19       to the victim's general losses; reasonable
         predictions of the number of future offenders
20       likely to be caught and convicted for crimes
         contributing to the victim's general losses;
21       any available and reasonably reliable
         estimate of the broader number of offenders
22       involved (most of whom will, of course, never
         be caught or convicted); whether the
23       defendant reproduced or distributed images of
         the victim; whether the defendant had any
24       connection to the initial production of the
         images; how many images of the victim the
25       defendant possessed; and other facts relevant
         to the defendant's relative causal role.
26

27   Id. "These factors . . . should . . . serve as rough guideposts

28   for determining an amount [of restitution] that fits the

                                    7

1  offense." <u>Id.</u>

2      The government bears the burden of proving the amount

3  of a victim's losses by a preponderance of the evidence. <u>See id.</u>

4  at 1729 ("[T]he government . . . bears the burden of proving the

5  amount of the victim's losses[.]" (citing 18 U.S.C. § 3664(e));

6  <u>United States v. Kennedy</u>, 643 F.3d 1251, 1263 (9th Cir. 2011)

7  ("[T]he government must prove by a preponderance of the evidence

8  that [the defendant's] offenses proximately caused the losses

9  incurred by [the victims].")). "[A] restitutionary award under §

10  2259 will be improper if the district court must engage in

11  arbitrary calculations to determine the amount of [a] victim's

12  losses." <u>Kennedy</u>, 643 F.3d at 1261 (citation omitted).

13  **III. DISCUSSION**

14      The government "asks the Court to award restitution to

15  "Vicky" and John Does I-V from the "Erik/8 Kids" series pursuant

16  to <u>Paroline v. United States</u>." (Gov't Supp. Br. Re Restitution

17  ("Gov't Supp. Br.") 2:4-6, ECF No. 75.) The government argues

18  under <u>Paroline</u>, "restitution is required where the 'defendant

19  possessed a victim's images' and (b) the 'victim has outstanding

20  losses caused by the continuing traffic in those images but where

21  it is impossible to trace a particular amount of those losses to

22  the individual defendant.'" <u>Id.</u> at 4:13-16. The government

23  further argues the "two groups of victims before the Court"

24  satisfy this standard and proposes a restitution award that

25  equals "the pool of each victim's proven losses [divided by] the

26  number of defendants convicted of possessing, receiving, or

27  distributing their images." <u>Id.</u> at 4:17-21, 7:5-6, 8:14-16.

28

1   Defendant opposes the restitution requests, rejoining

2   "the government has not met the required burden of proof to

3   justify an order of restitution." (Def.'s Opp'n 2:8-11, ECF No.

4   78.)

5   **A.   Whether Defendant Received the Victims' Images**

6   The first step in deciding whether to award restitution

7   under Paroline is to determine whether the Defendant received[2]

8   the victims' images. Paroline, 134 S. Ct. at 1727.

9   The government contends "sufficient evidence [exists]

10  under a preponderance standard to establish that the defendant

11  knowingly received the[ victims'] images." (Gov't Br. Re

12  Restitution ("Gov't Br.") 5:24-26, ECF No. 73.) Specifically, the

13  government argues:

14  > [T]he evidence shows that the computer where
    > the images were found belonged to defendant.
15  > There is no evidence that anyone other than
    > defendant (and the concerned citizen who
16  > reported the crime) used the computer.
    > Further, the defendant admitted that he
17  > downloaded and received child pornography
    > during the timeframe alleged in the
18  > indictment, and a recent forensic analysis
    > strongly suggests that the images at issue
19  > resided in a folder created and accessed by
    > the defendant during that timeframe. This
20  > evidence is sufficient for the Court to find
    > by preponderance [sic] that [among the
21  > images/videos] that the defendant knowingly
    > received w[ere the video that NCMEC
22  > identified as part of the "Vicky" series and
    > the image that NCMEC identified as part of
23  > the "Erik/8 Kids" series].

24  (Gov't Supp. Br. 6:2-12.)

25  Defendant rejoins the government has not met its burden

26  of proving "he knowingly [received] specific images of [the]

27  ---
    [2]   In Paroline, the defendant plead guilty to the possession of child
28  pornography, whereas here, the defendant plead guilty to the receipt and
    distribution of child pornography proscribed in 18 U.S.C. 2252(a)(2).

persons who claim restitution." (Def.'s Opp'n 4:23-25.) Defendant argues "a person [receives] an image of child pornography only when he knows it is present on his computer[,]" and the record "does not show that [Defendant] actually viewed" the referenced image and video that were found on his computer. Id. at 2:23-25, 3:11-13. Defendant further argues concerning John Does I-V: "the single image from th[e "Erik/8 Kids"] series is not described in any of the government's filing[s], so the Court cannot determine which of the claimants may be depicted in that image, or whether any of the five claimants are in fact depicted. Id. at 6:4-10.

The Ninth Circuit has held that "a person . . . knowingly receive[s] and possess[es] child pornography images when he seeks them out over the internet and then downloads them to his computer." United States v. Kuchinski, 469 F.3d 853, 861 (9th Cir. 2006); see also United States v. Romm, 455 F.3d 990, 999 (9th Cir. 2006) ("[A] defendant who downloads child pornography can be prosecuted for knowing possession of child pornography."). Although Defendant cites language in Paroline that discusses a victim's harm as stemming from the *viewing* of his or her images to support his argument that a defendant does not knowingly receive child pornography unless he or she opens or views the image, (Def.'s Opp'n 5:8-11, citing Paroline, 134 S. Ct. at 1727), Defendant has not shown that opening and/or viewing an image is a required element of knowing receipt. In Paroline, the Supreme Court did not decide whether the defendant knowingly possessed or received the victim's images; the defendant "admitted to possessing between 150 and 300 images of child pornography, which included two that depicted the sexual

10

exploitation of [the person seeking restitution]." <u>Paroline</u>, 134 S. Ct. at 1716. Moreover, in <u>Paroline</u>, the Supreme Court discusses victims' harm in terms of the continuing circulation of their images as well as the viewing of their images. <u>See e.g.,</u> <u>id.</u> at 1717 ("The harms caused by child pornography . . . are . . . more extensive because child pornography is 'a permanent record' of the depicted child's abuse, and 'the harm to the child is exacerbated by [its] circulation.'" (quoting <u>New York v.</u> <u>Ferber</u>, 458 U.S. 747, 759 (1982)); <u>see also</u> <u>id.</u> at 1722 ("It is perhaps simple enough for the victim to prove the aggregate losses . . . that stem from the ongoing traffic in her images as a whole.").

In this case, Defendant admitted to downloading and possessing child pornography from March 2009 through October 2009. (Plea Agreement 17.) Review of the computer at issue revealed hundreds of images and videos of child pornography, many of which were downloaded by Defendant using the peer-to-peer file-sharing network, Gigatribe. (Plea Agreement 15; PSR ¶ 3.) Defendant admitted to using multiple user names on the file-sharing network, including "pnpcaliperv." (PSR ¶ 5.) "Forensic analysis of the computer shows no evidence of any users of the computer other than [Defendant] (and the concerned citizen [who turned over the computer to law enforcement upon his/her discovery of child pornography])." (Plea Agreement 15-16.)

A video from the "Vicky" series, "Vicky_newest_(PTHC).wmv," was located on the computer in the following path: C/Documents and Settings/Amado/My Documents/My Downloads/Gigatribe/pnpcaliperv/vids/Vicky_newest_(PTHC).wmv.

(Forensic Investigation Report 2.) An image file from the "Erik/8 Kids" series, "P080.jpg," was located on the computer in the following folder path: C/Documents and Settings/Amado/My Documents/My Downloads/Gigatribe/pnpcaliperv/pics/P080.jpg. Id. The folders in which the referenced image and video were found are "user created folders[,]" which were created on May 27, 2009, and May 28, 2009. (Lawson Decl. 3.) After being downloaded, the image and video were "likely moved to th[e] new folder[s] on May 30, 2009. Id. at 3-4.

The referenced evidence, and the reasonable inferences that can be drawn therefrom, establish by a preponderance of the evidence, that Defendant knowingly received "Vicky's" video, "Vicky_newest_(PTHC).wmv." The record also evinces by a preponderance of the evidence that Defendant knowingly received the "P080.jpg" image from the "Erik/8 Kids" series. However, the record does not indicate which unnamed victim(s) from the "Erik/8 Kids" series are depicted in that image. Further, since John Does I-V comprise only five of eight individuals who are the subject of the "Erik/8 Kids" series of child pornography, it is possible that image P080.jpg does not depict John Doe I, II, III, IV, or V. Therefore, it cannot be inferred that Defendant knowingly received an image of John Doe I, II, III, IV, and/or V. Accordingly, each John Doe's restitution request is DENIED.

**B.   Whether "Vicky" Has Outstanding Losses Caused by the Continuing Traffic in Her Images**

The second step in deciding whether restitution should be awarded under Paroline is to determine whether the victim seeking restitution "has outstanding losses caused by the

12

continuing traffic in [her] images." <u>Paroline</u>, 134 S. Ct. at 1727.

The government contends "['Vicky']³ has submitted sufficient evidence in support of [her] 'outstanding losses caused by the continuing traffic in the images' depicting [her] abuse." (Gov't Supp. Br. 7:5-6 (quoting <u>Paroline</u>, 134 S. Ct. at 1727).) Specifically, the government argues: "'Vicky' has submitted a substantial amount of documentation concerning her ongoing psychological injuries, which several mental health professionals have determined are caused by her knowledge of the continued activity of individuals who download or distribute images of her childhood sexual abuse." <u>Id.</u> at 7:6-9.

Defendant does not dispute that "Vicky" has suffered losses as a result of the ongoing traffic in her images, and the record evinces she has under the preponderance of the evidence standard. For example, in the April 11, 2014 Psychological Status Report concerning "Vicky's" psychological status, Randall Green, Ph.D. opines:

> In my professional opinion, the initial evaluation and four updates, covering approximately 4-1/2 years, support the conclusion, based upon a reasonable degree of psychological probability, that ["Vicky"] has suffered, is suffering, and will continue to suffer psychological injury that is related to the collective contribution of each individual downloader, whether she has any specific knowledge of any particular one, or not.
>
> . . . .

---

³ Because the government has not shown that Defendant received an image of John Doe I, II, III, IV, and/or V, the order does not address the parties' respective arguments concerning John Does I-V's restitution request on the remaining issues.

1
2
3
4
It is my conclusion that her knowledge of the collective group who has or will possess such images is linked to specific psychological damages for her. This is not theoretical, but supported by the information available to me in the successive evaluations or updates conducted on ["Vicky"].

5
(Psychological Status Report Summary–IV 20, April 11, 2014.)

6
### C.   Calculation of Vicky's Restitution Award

7
Since the government has shown by a preponderance of

8
the evidence that Defendant received "Vicky's" video,

9
"Vicky_newest_(PTHC).wmv," and that "Vicky" has outstanding

10
losses caused by the continuing traffic in her images, the Court

11
must "order restitution in an amount that comports with

12
[Defendant's] relative role in the causal process that underlies

13
[her] general losses."[4] Paroline, 134 S. Ct. at 1727.

14
The government proposes two alternative methods to

15
calculate the amount of Vicky's restitution award. First, "the

16
government proposes that the Court divide the pool of ["Vicky's"]

17
proven losses by the number of defendants convicted of

18
possessing, receiving, or distributing [her] images." (Gov't

19
Supp. Br. 8:14-16.) As an alternative, the government advances

20
"Vicky's" counsel's proposed approach, as follows:

21
22
23
24
25
26
[A]ccording to the letter submitted by Vicky's lawyer on May 21, 2014, Vicky is currently seeking $27,500 in restitution. This includes $25,000 in general restitution and $2,500 in attorneys' fees. This amount accords with legislation recently introduced in the Senate in response to the Court's Paroline decision. The proposed legislation provides that a defendant should be liable either for the "full amount of the victim's

27
28
---
[4]    In Paroline, the Supreme Court uses the term "general losses" to reference a victim's "aggregate losses, including the costs of psychiatric treatment and lost income, that stem from the ongoing traffic in her images as a whole." Paroline, 134 S. Ct. at 1722.

losses" or at least . . . $25,000 where the offense is possession.

Id. at 9:12-17. The government contends "[e]ither [method] is reasonable in light of the factors outlined in Paroline and the information presently available to the Court." Id. at 9:18-20.

Defendant opposes the use of either proposed method and argues "the known [Paroline] factors weigh against an order of restitution." (Def.'s Opp'n 5:25-26.) Defendant rejoins concerning the first approach as follows:

> [T]he government suggests the Court should simply divide the claimed losses by the number of criminal defendants who have been ordered to make restitution of those losses. But dividing the loss in this manner ignores the Supreme Court's direction to also consider "reasonable predictions of the number of future offenders" and "any available and reasonably reliable estimate of the broader number of offenders" who have yet to be caught. The government concedes that it lacks this information, but the Court is nevertheless required to consider it, and the government, because it is advocating on behalf of the claimants, is required to include it in its calculus.

Id. at 6:11-23 (citations omitted). Defendant counters regarding the second approach that "the Court has no authority to apply or enforce a law that does not exist." Id. 7:8-13.

At the June 27, 2014 restitution hearing, Defendant provided further argument concerning the calculation of Vicky's restitution award. Defendant's counsel indicated he located over sixty past orders awarding restitution to "Vicky," and many of them awarded "Vicky" three hundred dollars ($300.00) or less. Defendant argues since there is no evidence that Defendant viewed or distributed "Vicky's" video, and only one video of "Vicky" was

found on his computer, a restitution award of $300.00 in this case would properly represent Defendant's relative causal role in "Vicky's" general losses.

The government has provided no authority to support using _proposed_ legislation as the basis for a calculation of restitution under 18 U.S.C. § 2259. Therefore, "Vicky's" counsel's request for $27,500 in restitution is denied.

In contrast, the government's first proposed approach, i.e., that the court divide "Vicky's" proven general losses by the number of defendants convicted of possessing, receiving, or distributing her images appears to be a workable method to "set an award of restitution in consideration of [the known] factors that bear on the relative causal significance of the defendant's conduct in producing those losses." _Paroline_, 134 S. Ct. at 1728. Although the government states in its supplemental brief that it "does not presently have an estimate of the broader number of offenders involved in the distribution of ["Vicky's"] images," (Gov't Supp. Br. 8 n.3), _Paroline_ does mandate consideration of that number. The Supreme Court simply listed that value as a factor that could be considered. _Paroline_, 134 S. Ct. at 1728. Moreover, the Supreme Court stated: "it is neither necessary nor appropriate to prescribe a precise algorithm for determining the proper amount [of restitution]," and the proposed list of factors that a district court may consider in awarding restitution "need not be converted into a rigid formula, especially if doing so would result in [a] trivial restitution order[]." _Id._ at 1728.

Further, although Defendant argues by comparison to prior orders awarding "Vicky" restitution that an award of

$300.00 is appropriate in this case, it appears that the majority of the past $300.00 restitution awards were decided before Paroline, and Defendant provides no information concerning the district courts' methodology used in calculating the restitution awards in those cases.

For the stated reasons, the Court adopts the government's first proposed approach to determine the amount of "Vicky's" restitution award.

In "Vicky's" updated restitution request dated May 22, 2014, "Vicky" lists general losses totaling $1,082,180.51, which comprises "$113,600.00 in [psychological] counseling expenses, $53,330.00 in educational and vocational counseling needs and lost part-time income during schooling, $828,150.00 in lost earnings, and $87,100.51 in expenses paid in out of pocket costs incurred relative to restitution determination." ("Vicky's" Restitution Req. ("Vicky's" Req.") 2, May 22, 2014.) "Vicky's" counsel also seeks to receive an apportioned value of her total attorney's fees expended in her representation of "Vicky." (Id. at 12.) Each requested category of losses is addressed in turn.

"Vicky" requests an apportioned value of $113,600.00 in psychological counseling costs. This amount is based upon the expert opinion of clinical psychologist, Randall L. Green, Ph.D., that "Vicky" "continues to require individual therapy for reasons that are directly and indirectly related to the knowledge of continued downloading and dissemination of her images, and the intermittent discovery of various attempts by those who have viewed her images to penetrate her privacy boundaries." (Psychological Status Report Summary-IV 17.) Dr. Green opined

1  that "Vicky's" "[t]otal maximum est[imated] range of recommended
2  interventions if followed and clinically indicated" totals
3  "$108,975 to $113,600." Id. at 18.

4       Instead of assuming $113,600 in psychological
5  counseling costs, which represents the highest value of Dr.
6  Green's estimated range, the Court will use the average amount of
7  this range, $111,287.50; this value will be included in the total
8  of general losses to be apportioned to Defendant.

9       "Vicky" requests an apportioned value of $53,330.00 in
10  educational and vocational losses. ("Vicky's" Req. 2.) "Vicky"
11  supports this request with the expert opinion of vocational
12  consultant, Merrill Cohen. Ms. Cohen opines that Vicky's
13  "knowledge and understanding that [her] images . . . will persist
14  in perpetuity has le[d] to significant psychological sequelae
15  that impacts her education, career development, vocational
16  situation, and earning capacity." (Vocational Assessment 1, Mar.
17  10, 2010.) As a result of the referenced sequelae, Ms. Cohen
18  opines "Vicky" has and will incur the following
19  educational/vocational losses:

20       - an additional semester of college and an
21  additional year of graduate school ($34,580.00)

22       - lost part-time wages while attending school
23  because of "Vicky's" inability to both attend school full-time
24  and hold a part-time job ($15,000)

25       - educational and career counseling ($3,750.00)
26  (Updated Vocational Assessment 4, Apr. 23, 2014.)

27       The entire $53,330.00 in educational and vocational
28  losses will be included in the total of general losses to be

1  apportioned to Defendant.

2       "Vicky" requests an apportioned value of $828,150.00 in
3  lost earnings based upon the expert opinion of economist Stan V.
4  Smith, Ph.D. Dr. Smith "has calculated the loss of earnings
5  attendant to the delay in entry into the work force and the
6  predicted recurrent interruption in her work life that the need
7  for therapy and periodic triggering of her panic and anxiety over
8  the presence of her images on the internet." ("Vicky's" Req. 11;
9  see also Updated Economic Assessment 5, May 5, 2014.)

10      The entire $828,150.00 in lost earnings will be
11 included in the total of general losses to be apportioned to
12 Defendant.

13      "Vicky" seeks an apportioned value of $87,100.51 in out
14 of pocket costs ("costs"). "Vicky" supports this request with her
15 counsel's itemized, chronological summary of costs expended in
16 her representation. However, review of the cost summary evinces
17 some of the costs predate Defendant's offense conduct, and many
18 of the costs are traceable to other litigation. Such costs are
19 excluded from the total of costs that will be apportioned to
20 Defendant. See United States v. Gambel, 709 F.3d 541, 554 (6th
21 Cir. 2013) ("[I]t should be clear that allocation will not apply
22 when proximately caused harms are clearly traceable to a
23 particular defendant. An example would be litigation costs in
24 connection with the particular defendant."); Paroline, 134 S. Ct.
25 at 1727 ("[W]here it is *impossible to trace a particular amount*
26 of [a victim's losses] to the individual defendant . . . a court
27 . . . should order restitution in an amount that comports with
28 the defendant's relative role . . . ." (emphasis added)); see

1   also Gambel, 709 F.3d at 554 ("As a logical matter, a defendant

2   generally cannot cause harm prior to the date of his offense.").

3   The costs which postdate Defendant's offense conduct and cannot

4   be traced to a particular Defendant total $50,501.67. This amount

5   includes, for example, the expense of "Vicky's" initial and

6   updated expert evaluations, and the expense of obtaining her

7   medical and school records. $50,501.67 will be included in the

8   total of general losses to be apportioned to Defendant.

9       "Vicky" also requests $2,500.00 in attorney's fees.

10   ("Vicky's" Req. 2.) However, this request is not supported by

11   evidence concerning "Vicky's" counsel's time spent in this

12   litigation. "Vicky's" counsel's declaration submitted in support

13   of her restitution request only provides the number of hours she

14   has spent representing "Vicky" generally. (Decl. of Carol

15   Hepburn, May 10, 2014.) Therefore, no attorney's fees will be

16   included in the total of general losses to be apportioned to

17   Defendant.

18       Accordingly, the total amount of "Vicky's" general

19   losses to be apportioned to Defendant totals $1,043,269.17

20   ($111,287.50 in psychological counseling, $53,330.00 in

21   vocational/educational losses, $828,150.00 in lost wages, and

22   $50,501.67 in costs). After dividing this amount by the number of

23   standing restitution orders for "Vicky" (457)[5], the amount of

24   "Vicky's" general losses that can be attributed to Defendant is

25   $2,282.86.

26   ///

27   ///

28   [5]    See Gov't Supp. Br. 9.

1

### IV. CONCLUSION

2          For the stated reasons, "Vicky" is awarded $2,282.86 in

3    restitution, and each John Doe's restitution request is denied.

4    Dated:   June 30, 2014

5

6    _____

7    GARLAND E. BURRELL, JR.
     Senior United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28